OPINION OF THE COURT
Emily Pines, J.
Plaintiffs, two shareholders of the nominal defendant, FalconStor Software, Inc. (FalconStor or the company), commenced this shareholders’ derivative action, asserting that under the direction and watch of the company’s board of directors, several of its employees engaged in an unlawful scheme to bribe JP Morgan Chase Bank, N.A. (JP Morgan) so that it would purchase FalconStor’s data protection products. Plaintiffs set forth that as a result of the scheme, the company entered into a deferred-prosecution agreement with the U.S. Attorney’s Office for the Eastern District of New York and a consent judgment in settlement of a civil action brought by the Securities and Exchange Commission (SEC). As part of its agreement, the company acknowledged responsibility for conspiracy to violate the Travel Act (18 USC § 1952 [a] [3]), the Securities and Exchange Act of 1934 (15 USC § 78m [b] [2] [A]), the U.S. Criminal Code (18 USC) § 371, and New York Penal Law §§ 180.03, 180.08, and 20.00. The plea entered into with the company required it to accept as true all facts and allegations asserted by the special agent of the Federal Bureau of Investigations as set forth in the action by the U.S. Attorney’s Office.
The underpinning of the allegations of plaintiffs’ amended complaint is based upon the admitted allegations. It states that as a result of its bribery scheme, the company entered into contracts with JP Morgan worth over $12 million. However, since the contracts resulted, at least in part, from illegal bribes paid to employees of JP Morgan and/or their family members, the named defendants, members of the company’s board of directors, certain officers and employees, concealed the bases *918 for the lucrative contracts (compl ¶ 7).[1] Thus, plaintiffs assert that the company made materially misleading public statements about the true nature of its business relationship with JP Morgan.
In addition to the misleading statements, the amended complaint states that under the direction of the board, the company failed to record accurately expenses associated with the bribes and failed to implement adequate controls or safeguards to prevent such conduct (compl ¶ 9). Since the bribes consisted, in part, of grants of FalconStor stock options and restricted stock and were not awarded as appropriate compensation to employees, officers, consultants or advisors of the company, they violated the company’s approved shareholder plan and were in violation of federal securities laws.
The amended complaint alleges that on September 29, 2010, when the company admitted that illegal tactics were utilized to obtain these lucrative contracts, FalconStor’s chair, president and chief executive officer (Mr. Huai) resigned his positions and the board announced that it had created an internal investigative committee to review certain practices. Thereafter, according to plaintiffs, the company’s stock price fell over 22%. FalconStor’s director of regional sales, defendant Lin, as well as a JP Morgan employee, Ted Zahner, pleaded guilty to violations of the Travel Act and Lin also pleaded guilty to extortion, in which Lin testified that he extorted Mr. Huai due to Huai’s involvement in the bribery scheme (compl ¶ 15).
Plaintiffs also set forth that the board’s disclosures to the SEC as a result of its internal investigation were deemed inadequate by the SEC, prompting a further SEC inquiry in April 2011 questioning the company’s disclosures (compl ¶¶ 16, 17). It is further alleged that it was only as a result of prompting by the SEC that the board finally announced the results of its investigation on May 10, 2011, but that it did not, at that time, disclose the identities of those individuals who knowingly participated in the bribery scheme or what action, if any, the company had taken concerning such individuals (compl ¶¶ 18, 19). Thereafter, the plaintiffs assert that the SEC sent yet further inquiry asking for the titles of those employees that were involved with the payments and whether they were still employed by the company (compl ¶ 20). Finally, on September *919 26, 2011, on the day before Mr. Huai was set to plead guilty and face bribery charges in the action against him, he committed suicide (compl ¶ 21).
As a result of these actions, on July 3, 2012, FalconStor entered into its agreements with the U.S. Attorney and the SEC, requiring the company to pay civil penalties of $5.8 million and to publicly acknowledge responsibility for the violations set forth above (compl ¶¶ 24, 25). The facts which the defendants have accepted and acknowledged as true, as per the amended complaint herein, include that illegal grants of stock options and restricted stock were issued in connection with a bribery scheme from 2007 through April 2010 (compl ¶ 26). It is asserted that by that end date, three of the six members of the board of directors were serving as members of the compensation committee which was responsible for making such awards (compl ¶ 26).
The plaintiffs have, therefore, sued the directors, various officers and employees of the company for breach of fiduciary duty asserting that: (1) they repeatedly disseminated misleading information; (2) they failed to maintain adequate controls; (3) they failed to properly oversee FalconStor; and (4) they issued options and restricted stock in violation of the shareholder approved plan (compl ¶¶ 138-151, 164-168). They also claim the defendants were unjustly enriched by these wrongful actions (compl ¶¶ 152-154).
Defendants Wayne Lam, James Weber, Eli Oxenhorn, Steven R. Fischer, Alan W. Kaufman, Irwin Lieber, James E McNiel, Barry Rubenstein, Fatrick B. Carney and nominal defendant, FalconStor (FalconStor defendants) move to dismiss the plaintiffs’ amended complaint pursuant to CFLR 3211 (a) (7) and Delaware Chancery Court Rule 23.1. Defendants estate of ReiJane Huai and ShuWen Huai, as executrix/fiduciary of the estate of ReiJane Huai (estate defendants) also move to dismiss the amended complaint upon the same grounds.[2] Both sets of moving defendants assert that the plaintiffs lack authority to commence a lawsuit that really belongs to the company, since that is a decision to be made by the board of directors, who are the ones that manage the business and affairs of FalconStor. The moving defendants claim that under existing applicable Delaware law, shareholders wishing to commence such deriva *920 tive litigation must first make a demand to do so upon the corporate board of directors. They assert that this requirement is only excused where the plaintiffs state with particularity in their pleading facts establishing that a demand would have been futile because the majority of the board of directors was incapable of exercising independent business judgment with respect to such a demand, or, to the extent that the board actually approved a challenged action, because that transaction is not entitled to the protection of the business judgment rule. It is the moving defendants’ argument that, in this case, five of the six directors on the board at the time of commencement of this action were and are outside directors; four joined the board following the period during which virtually all the conduct described had transpired; and none have been implicated in either the U.S. Attorney’s action or in the SEC action. Thus, they state that plaintiffs have not alleged facts demonstrating that a majority of the board either lacked independence or that any of their actions ran afoul of the business judgment rule. They allege further that even if demand were to be excused, the amended complaint fails to state a claim as none of the allegations describe any particular facts showing wrongdoing or gross mismanagement as required.
The FalconStor defendants make reference to certain allegations contained both in the plaintiffs’ amended complaint, the deferred prosecution agreement (attached to their affirmation as exhibit B) and various correspondence with the SEC, all of which are incorporated into the amended complaint for purposes of these motions. They set forth that during the time of the described misconduct, ReiJane Huai was the company’s chairman, president and chief executive officer, James Weber was the company’s chief financial officer, treasurer and vice-president, and Wayne Lam was vice-president (compl ¶¶ 31-34). None of these personnel were on the board of directors at the time of the filing of the original complaint in this action. Defendant Mc-Niel, who serves on the board, became its president and CEO on January 12, 2011 (compl ¶ 39). Defendants Oxenhorn, Fischer, Kaufman, Lieber, McNiel and Rubenstein are the board members serving at the time of the original complaint and five of the six of them are outside directors (compl ¶¶ 35-40). Board members Fischer and Kaufman joined the board prior to the period discussed; however, defendants claim that Oxenhorn, Lieber and Rubenstein did not join the board until late November 2009, after the date of the last contract with JP Morgan described in *921 the U.S. Attorney’s papers (compl ¶¶ 35-38). Defendants state that Oxenhorn, Kaufman, and Lieber were members of the compensation committee during part of the relevant period and that board members Fischer, Lieber and Rubenstein were members of the company’s audit committee (compl ¶¶ 35-40).
The FalconStor defendants argue that while the company acknowledged responsibility for violating certain federal laws and failing to properly maintain company books and records in connection with the commercial bribery, not a single member of the board is identified as being a knowing participant in the misconduct. They state further that the settlements memorialized the remedial actions taken by the board, including termination of company officers and employees responsible for the misconduct, reducing compensation and responsibilities of other officers involved in the misconduct, revising and providing enhanced training on ethics and compliance policies, and implementation of additional controls designed to prevent recurrence (compl, exhibit 2; defendants’ exhibit B).
The FalconStor defendants also assert that while the amended complaint alleges that the company “issued a series of materially false and misleading statements regarding the Company’s purported financial performance, in which [it] concealed that the company’s so-called financial ‘results’ [that] were, in substantial part, only ‘achieved through a secret and illicit bribery scheme,” there is no description of the role that a single board member played in connection with the statements or allegation that any of those six members knew or should have known that these statements were misleading when they were made. With regard to the plaintiffs’ allegations that the board failed to provide sufficiently specific disclosures concerning its internal investigations and to respond properly to SEC inquiries, the FalconStor defendants set forth: (1) that following the SEC’s letter, the company filed its form 10-Q for the quarter ending March 2011 and supplemented its prior disclosures (compl ¶ 18); (2) that the company also responded to the SEC’s letter by providing additional information and explaining, as requested, the reasons the company believed its disclosures had been adequate; and (3) that the SEC did ultimately accept the company’s disclosures (exhibits C-K, containing SEC and FalconStor correspondence).
Both parties agree that Delaware law applies to the demand futility analysis. (Kamen v Kemper Financial Services, Inc., 500 US 90 [1991].)
*922 Delaware Chancery Court Rule 23.1 (a) provides, in pertinent part:
“In a derivative action brought by one or more shareholders ... to enforce a right of a corporation . . . [t]he complaint shall. . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff’s failure to obtain the action or for not making the effort.”
The question of whether a stockholder’s demand upon the board of directors of a corporation is excused prior to the filing of a derivative suit is addressed by two leading Delaware Supreme Court cases. In Aronson v Lewis (473 A2d 805 [Del 1984], overruled in part on other grounds by Brehm v Eisner, 746 A2d 244 [Del 2000]), the court set forth a test concerning whether alleged improper actions on the part of the directors would make a shareholder demand prior to instituting litigation futile. In such cases, demand is excused if the derivative complaint pleads particularized facts creating a reasonable doubt that “(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.” (Id. at 814.) Where the derivative lawsuit does not assert a particular action by the board of directors, the test was stated in Rales v Blasband (634 A2d 927 [Del 1993]). In such actions, the shareholder plaintiff must demonstrate that “the particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.” (Id. at 934.)
Plaintiffs claim that their amended complaint demonstrates that there exists reason to doubt that the board of directors is disinterested or independent since five of the six board members were serving at the time when at least some of the illegal stock options were granted and three of the board members, the number allegedly required under their reading of the law, served on the compensation committee, which approved these unlawful options. Therefore, they assert that a majority of the board cannot be independent or considered disinterested as they face a substantial likelihood of personal liability. Plaintiffs also argue that there exists reason to doubt that a majority of the board is entitled to the protection of the “business judgment” rule again because five members served on the board at the time the *923 shareholder plan was violated and three served on the committee that approved the options, the last of which occurred in April 2010. Plaintiffs also set forth that the entire board was engaged in one form or another in a tacit approval of clearly illegal business strategies, including misstatements in releases, awarding of unlawful compensation, failure to respond to SEC inquiries, and lack of appropriate oversight during a period of criminal and otherwise unlawful behavior, including the kind of behavior that does not constitute protected business judgment, under Aronson or Rales. Finally, plaintiffs opine that the defendants’ reliance on the exculpatory clause contained within the company charter is inappropriate to raise in a motion to dismiss under CPLR 3211 (a).
Defendants argue that the amended complaint fails to set forth with any specificity either disinterestedness or a lack of independence on the part of the board. They assert that there are no particularized factual allegations establishing that any of the directors knew or should have known of the ongoing misconduct; that four of the six directors were not even members of the board until after the last contract with JP Morgan was executed; and that there was no pleading setting forth the role of any board member with regard to the statements concerning corporate finances or that any of them had knowledge of their falsity. With regard to the members of the audit committee, the moving defendants state there are no particularized facts concerning their actions other than failure to exercise oversight, clearly inadequate under the applicable standards; and with regard to the compensation committee, defendants do not set forth the assertedly necessary requirement of knowledge or bad faith concerning the stock option grants. Defendants also state that the plaintiffs fail to allege any factual basis demonstrating a likelihood of personal liability, showing lack of disinterest, since there is no particularized allegation of bad faith conduct set forth as required. For the same reasons they assert that board and committee actions concerning the stock option grants cannot meet the failure to exercise valid business judgment standard. With regard to the alleged inadequate disclosures to the SEC as a basis for lack of independence, defendants argue that the case law specifically rejects this sort of claim, where plaintiffs seek to challenge information provided and not the execution of the investigation itself and that the SEC documents annexed to the pleadings demonstrate that the SEC advised the company on November 11, 2011, that *924 it had completed its review (defendant’s exhibit K). The moving defendants argue further that there is no showing of lack of independence based upon a substantial likelihood of personal liability due to the broad exculpatory provisions of the company’s charter which specifically shields directors from breaches of fiduciary duties absent facts suggesting disloyalty, bad faith, intentional misconduct or receipt of an improper personal benefit. As to the allegations that the board facilitated the criminal activity, they argue such fails to demonstrate lack of independence, when the pleading contains no particularized facts demonstrating that they knew or should have known of the criminal behavior.
Director-by-Director Analysis
Board Member Interest
It appears to the court that the plaintiffs’ complaint invokes both the Aronson test, with regard to allegations concerning the actions taken by the compensation committee members as well as statements made to the SEC by the board as a result of the internal investigation, and Rales, concerning alleged failures to act, such as the alleged lack of oversight and failure to implement proper corporate controls during ongoing criminal activity. Under either test, a plaintiff must allege director-by-director facts with particularity demonstrating demand would be futile, because the relevant directors lack independence or the complained of actions were not taken in good faith, as a result of exercise of business judgment. (See Aronson-, Rales.)
The general rule is articulated in Postorivo v AG Paintball Holdings, Inc. (2008 WL 553205, 2008 Del Ch LEXIS [Del Ch Ct, Feb. 29, 2008, Nos. 2991 VCP, 3111 VCP]). There, a shareholder challenged two actions by the board, including an inventory write-down, described as a “firesale,” and his ouster from the corporate business. The Delaware Chancery Court granted the corporate defendants’ motion to dismiss, finding that plaintiffs failed both the Aronson and Rales tests for demand excusal. The court set forth that plaintiffs failed to meet the Rales test since the allegation merely set forth the Rales standard that the directors were incapable of disinterestedly considering a demand to initiate an action without “the fact-intensive, director-by-director analysis required to meet the pleading standard for demand futility” (2008 WL 553205 at *6, 2008 Del Ch LEXIS at *19). The court went on to state that the *925 same factually intensive director-by-director analysis is required by the first prong of the Aronson test and, thus, also fails.
The intensive pleading requirements appear to have been demanded by the Delaware courts even in those cases involving allegations and admissions of corporate criminal conduct. (In re Dow Chem. Co. Derivative Litig., 2010 WL 66769, 2010 Del Ch LEXIS 2 [Del Ch Ct, Jan. 11, 2010, No. 4349 CC].) In this case, shareholders commenced a derivative action accusing board members of breach of their fiduciary duties based upon the board’s approval of a merger agreement that unconditionally obligated Dow to consummate the merger (without typical financial protections), as well as their misrepresentations regarding alleged wrongdoings including bribery. Looking at the Aronson test concerning the board’s approval of the merger, the chancery court found that the first prong was not met because none of the directors were interested in the transaction. The court specified that none of the directors received benefits other than those available to all shareholders. With regard to the second prong of the Aronson test, the court found that there was no showing that the board’s decision was anything other than a valid business judgment. Concerning the failure to oversee the allegations of wrongdoing, under Rales, the court ruled that the plaintiffs failed to plead particularized factual allegations to create a reasonable doubt that the board could have, at the time the complaint was filed, validly exercised its independent and disinterested business judgment. As set forth, this can be shown only “in the rare case when a plaintiff is able to show director conduct that is ‘so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.’ ” (2010 WL 66769 at *12, 2010 Del Ch LEXIS 2 at *44, citing Rales.)
In the case of In re Caremark Intl. Inc. Derivative Litig. (698 A2d 959 [Del Ch Ct 1996]), where the board approved a settlement of a shareholders’ derivative suit that involved a series of disclosure and oversight promises but no payment of damages, the court examined the question of whether there was any potential liability in the underlying derivative suit based upon the futility of demand on the board issue. Here, the derivative suit arose after the corporation was found to have violated federal and state anti-kickback laws, including criminal violations, by entering into agreements with medical providers that prescribed or recommended services or products that Caremark *926 provided. Two of Caremark’s officers were found to have violated such laws, and the corporation pleaded guilty in settlement of these actions and made substantial payments in restitution. In approving the settlement, which essentially called for the creation of a new compliance committee, the Delaware Chancery Court found that the derivative claims were likely to have been dismissed because there was no evidence that the board knowingly caused the corporation to violate a criminal statute, or that the director defendants were guilty of a sustained failure to exercise their oversight function. The court stated that
“[t]he liability that eventuated in this instance was huge. But the fact that it resulted from a violation of criminal law alone does not create a breach of fiduciary duty by directors. The record . . . does not support the conclusion that the defendants either lacked good faith in the exercise of their monitoring responsibilities or conscientiously permitted a known violation of law by the corporation to occur.” (Id. at 972.)
The Caremark standard was adopted by the Delaware Supreme Court in Stone ex rel. AmSouth Bancorporation v Ritter (911 A2d 362 [2006]), where the court affirmed dismissal of a derivative suit that followed payment by the corporation of $40 million in fines and $10 million in civil penalties to resolve government and regulatory investigations as a result of the failure of the corporation’s employees to file certain reports required by anti-money-laundering regulations. In reiterating the requirement of bad faith or intentional, knowing permission of continued violations, the court set forth the underlying principle giving rise to such stringent rules. It stated that
“[i]t it is a fundamental principle of the Delaware General Corporation Law that ‘[t]he business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors. . . .’ Thus, ‘by its very nature [a] derivative action impinges on the managerial freedom of directors’ ” (id. at 366 [citation omitted]).
In addition, where directors were found to have interests in corporate entities that received major contributions from the nominal defendant, neither Aronson nor Rales was found to have been satisfied absent specific allegations of wrongdoing and bad faith (see In re J.P. Morgan Chase & Co. Shareholder *927 Litig., 906 A2d 808 [Del Ch Ct 2005] [allegations that acquiring corporation paid unnecessary premium for an acquired corporation, where majority of directors had interests in corporation that did business with the acquired corporation or were involved with charitable corporations that received contributions from the corporation, without more, insufficient to meet either prong of the Aronson test to excuse demand]; see also Brehm v Eisner, 746 A2d 244 [2000] [board of directors approved large severance package for former president and Delaware Supreme Court found no particularized facts set forth by plaintiffs that could create a reasonable doubt that the directors were disinterested and independent]).
The issue of public statements containing misleading information was also addressed by the Delaware Chancery Court. (In re Citigroup Inc. Shareholder Derivative Litig., 964 A2d 106 [2009].) Here, shareholders brought a derivative action against, inter alia, directors of a financial services corporation, asserting breach of fiduciary duties by failing to adequately protect the corporation from exposure to the subprime lending market, and by approving a wasteful share repurchase program and compensation package for the retiring CEO. Delaware Chancery Court found that: (1) as to the board’s failure to heed warnings regarding the corporation’s exposure to subprime lending market, there were no particularized allegations of bad faith, but merely portions of public documents reflecting the worsening economy; (2) with regard to the directors’ misleading statements as to the corporation’s exposure to the subprime lending market, allegations were insufficiently specific as to actual misstatements or omissions and failure to demonstrate particular facts showing directors were aware of any misstatements. (Id.)
Reasonable Doubt That Board Exercised Business Judgment
As with the so-called lack of independence test, the requirement under both Aronson and Rales necessitates a particularized pleading creating a reasonable doubt that a majority of the directors exercised their business judgment. It is not sufficient, under Delaware law, to set forth facts demonstrating basic lack of oversight or even negligence in performing a director’s duties; rather, a standard of bad faith or gross negligence appears to be required under this aspect of the respective tests.
In Brehm v Eisner (746 A2d 244 [2000]), the Delaware Supreme Court rejected the plaintiffs’ claim of futility based upon reasonable doubt that the board action was the product of *928 business judgment. The court stated that pre-suit demand will be excused in a shareholder derivative suit if the particularized facts in the complaint create a reasonable doubt that the informational component of the directors’ decision making process, measured by concepts of “gross negligence,” included consideration of all material information reasonably available.
In a case attacking business judgment in connection with board approval of a wasteful share repurchase program, the court stated that demand would be excused based on a possibility of personal director liability only in the rare case where a plaintiff is able to show director conduct so egregious on its face that board approval cannot meet the test of business judgment and there exists a substantial likelihood of director liability. (In re Citigroup.) With regard to the issue of director oversight, that court held demand will be excused only where the plaintiff makes a showing of bad faith. A plaintiff can plead bad faith in order to show futility of demand as a requirement for the filing of the derivative lawsuit by alleging, again with particularity, that a director knowingly violated a fiduciary duty or failed to act in violation of a known duty to act, demonstrating a conscious disregard for his duties. The standard of director liability under the business judgment rule, according to the court, is predicated upon the concept of “gross negligence.” (Id.)
In Postorivo v AG Paintball Holdings, Inc., the court found that the second prong of the Aronson test regarding the corporate inventory write-down and his ouster was not met because plaintiff failed to prove that the underlying transactions could not have been a good faith exercise of business judgment. The court opined that a plaintiff cannot make up for the weakness of required particular allegations by simply stating that no board in the exercise of business judgment would have approved the challenged transactions, because this would eviscerate the business judgment rule. (Id.)
Board as Members of Compensation Committees That Took Action in Violation of Corporate Governing Documents
Although the general rule, as stated, requires allegations of lack of independence or inability to exercise business judgment by a majority of the board members at the time of the filing of the litigation, where half the board members are on a committee accused of violating corporate rules, the plaintiffs can succeed in such a derivative action by demonstrating lack of independence or failure to exercise business judgment by only half *929 the board in order to avoid the futility test. Thus, in Beneville v York (769 A2d 80 [Del 2000]), where one director of a two-member board entered into a marketing agreement between the corporation and another company in which the director had a financial interest and covertly conveyed an important corporate product to that company, the court found that demand was excused where “half of the board cannot impartially consider a demand” since, under Rales, “[a] director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders.” (Id. at 82, 84 n 3.)
In Ryan v Gifford (918 A2d 341 [2007]), the Delaware Chancery Court addressed the issue of futility where the derivative suit concerned the approval by a compensation committee, consisting of one half of the directors, which approved backdated stock option grants to the corporation’s chief executive officer in violation of shareholder approved stock option and stock incentive plans. The Delaware court first ruled that where one half of the board members in place at the time the complaint was filed had acted upon and approved the challenged transactions, the Aronson test applied for purposes of proving demand futility. (Id. at 353.) In that case, the stock option plans required that the exercise price be set at no less than 100% of the fair market value of the stock subject to the option on the date of the grant and the members of the board of directors sitting on the compensation committee had altered the actual date of the grant so as to affect the exercise price. (Id.) The court found that the plaintiff had raised the required reason to doubt whether the challenged transactions were a valid exercise of business judgment under Aronson agreeing, under the “unusual facts alleged” and set forth, that “knowing and intentional violations of the stock option plans . . . cannot be an exercise of business judgment.” (Id. at 354.)
In Sanders v Wang (1999 WL 1044880, 1999 Del Ch LEXIS 203 [Del Ch Ct, Nov. 8, 1999, No. 16640]), shareholders filed a derivative suit asserting that the directors, sitting on a compensation committee, granted stock options to a majority of board members in excess of the actual number of options authorized by the employee stock option plan. In determining that the alleged facts raised doubt as to the board’s exercise of valid business judgment under Aronson, the chancery court stated that a board’s knowing and intentional decision to exceed the shareholders’ grant of authority raised doubt regarding whether *930 the board’s decision in that case was a valid exercise of business judgment and was, therefore, sufficient to excuse a failure to make a demand. (Id. )
A careful reading of these cases demonstrates that the actions of the committee that violate the corporate regulations must be both knowing and intentional to run afoul of Aronson requirements. Thus, in Desimone v Barrows (924 A2d 908 [Del Ch Ct 2007]), the chancery court dismissed those portions of a derivative action which claimed directors and officers breached their fiduciary duties by failing to act on backdating of stock options of certain employees and officers, based upon the court’s finding there existed no excuse for failure to make demand; and also dismissed the cause of action based upon the grant of overly favorable stock options to majority of board members on failure to state a claim (in that case, excusing demand based upon showing of interest). The court found that it could infer nothing from the pleaded facts about whether and to what extent any director was involved in the mechanics by which the employee or officer options were issued or the dates on which that administrative task was carried out. With regard to the officer option grants, some of which the plaintiff claimed were spring loaded, that court stated that the complaint simply did not allege that any director was aware of positive information, announced 16 days following the grants. The court also looked to the exculpatory provisions of the corporate charter, which called for a scienter-based standard for liability. (See In re Finisar Corp. Derivative Litig., 542 F Supp 2d 980 [ND Cal 2008] [court refused to excuse demand in derivative action, alleging backdating of stock options, based, in part, on fact that certain board members were members of compensation committee, because complaint was devoid of any factual allegations that any members of the board, including those on the committee, were aware that employees were receiving backdated options].)
Differing Standard for Outside Directors
The Delaware courts appear to require even more factually specific allegations where futility of demand upon outside directors is asserted.
In Moran v Household Intl., Inc. (500 A2d 1346 [1985]), the Delaware Supreme Court, in reviewing an attacked board of directors’ preferred share purchase rights plan, under the business judgment rule, described the business judgment rule as a presumption that in making a business decision, directors of a *931 corporation act on an informed basis, in good faith and in honest belief that an action is taken in the best interests of the company. The court went on to rule that while directors must show that a takeover defense mechanism, as occurred in that case, was reasonable in relation to the threat posed, that such “proof is materially enhanced . . . where . . . the majority of the board favoring the proposal consisted of outside independent directors” who acted in good faith and in honest belief that their action was in the best interest of the company. (Id. at 1356.)
In Morrone ex rel. Arotech Corp. v Erlich (2011 WL 1322085, 2011 US Dist LEXIS 36473 [ED NY, Mar. 31, 2011, No. 09 CV 1910 (RJD) (VVP)]) the subject corporation, Arotech, was sued by the SEC, for failure to disclose a federal termination for default concerning armor it provided to government helicopters. A federal court had previously held that the corporation’s failure to report such information was deliberate and all senior management of the corporation knew of the undisclosed information. Yet the court in the derivative suit which followed dismissed the action, based upon the failure to make demand upon the board of directors because the majority of the board were outside directors. The court stated that “outside ‘directors are entitled to a presumption that they were faithful to their fiduciary duties’ ” (2011 WL 1322085 at *6, 2011 US Dist LEXIS 36473 at *19, citing Beam v Stewart, 845 A2d 1040 [Del 2004]).
“To rebut this presumption and establish director liability for a failure of oversight, a plaintiff must adequately plead and then prove that ‘the directors utterly failed to implement any reporting or information system or controls’ or that, with such a system or controls in place, the directors ‘disabled] themselves from being informed of risks’ ” (id., citing Stone v Ritter, 911 A2d 362 [2006]).
Failure to Conduct Proper Internal Investigations
As with failure to exercise oversight claims as well as those involving improper actions, a claim concerning the inadequacy of actions of an internal investigative committee must be supported by particularized factual allegations. In this instance, such claims are often at odds with the requirements of demonstrating demand futility because they rest on the argument that the shareholder has abandoned the board as the vehicle for resolving the complained of wrongs. (See Desimone v Burrows, *932 924 A2d at 950; In re Finisar Corp. Derivative Litig., 542 F Supp 2d 980, 994 [2008] [where the court refused to excuse demand based on allegations of impropriety of internal audit committee investigation, stating that it was “reluctant to infer futility of demand on the basis that there has been no disclosure of what remedial action, if any, Finisar will take based on the results of its investigation. Notably, the burden rests on plaintiffs to demonstrate demand is futile based on particularized factual allegations, not by speculation”].)
Shield from Liability Based on Delaware Code Annotated, Title 8, § 102 (b) (7)
Some courts, in interpreting Delaware law, have looked to a corporation’s broad exculpatory clause, shielding directors from personal liability except in cases of bad faith and misconduct; however, it is somewhat unclear whether such should occur at the stage of a motion to dismiss.
In a shareholder’s derivative suit based upon a challenge to corporate merger, the Delaware Supreme Court in Emerald Partners v Berlin (726 A2d 1215 [1999]) addressed a defendant’s use of an exculpatory clause in a corporation’s certificate of incorporation, shielding directors from liability pursuant to Delaware Code Annotated, title 8, § 102 (b) (7). The court stated that where the bases for the plaintiffs claims solely implicate a violation of a duty of care the protections of such a charter provision may be invoked and applied. (Id. at 1224.) However, the motion in that case was one for summary judgment.
More recently, in Malpiede v Townson (780 A2d 1075 [2001]), where stockholders brought a breach of fiduciary duty and due care claim against a corporation’s board of directors following a merger, the Delaware Supreme Court addressed the propriety of defendants’ raising of a charter exculpatory provision under Delaware Code Annotated, title 8, § 102 (b) (7) as part of their motion to dismiss the claim. The court stated that (1) the more proper procedure would have been for the court to convert the motion to one for summary judgment, permitting further proof to be submitted or expedited discovery; however, (2) where the allegations were based solely upon a failure to exercise due care, as opposed to a breach of loyalty or other violation, the complaint is dismissible once the corporation’s section 102 (b) (7) provision is invoked. (Id. at 1092-1093.)
In Security Police & Fire Professionals of Am. Retirement Fund v Mack (93 AD3d 562 [1st Dept 2012]), the Court recently *933 affirmed the dismissal of a shareholders’ derivative suit against an investment firm and its board of directors, brought based upon compensation awards, in part because the corporate charter provided that directors were exculpated from liability to the extent authorized by Delaware Code Annotated, title 8, § 102 (b) (7), i.e., except for claims based on fraudulent, illegal or bad faith conduct. (Id. at 565.)
FalconStor
In this case, despite serious criminal activity on the part of those employees and officers named, not a single one of the current members of the board of directors was implicated either in the criminal or civil litigations described above. Even applying the Aronson test, in consideration of allegations that three board members sat on the compensation committee for a portion of the improper stock option awards, there is not a single fact alleged that these directors knew or indeed had reason to know that they were violating the shareholder plan. These awards were not even remotely akin to actions such as intentionally backdating stock option awards (many of which were given to the board members themselves or their families) in the cases cited by the plaintiffs. In addition to the above, the court finds particularly significant the fact that five of the six board members are outside directors, against whom futility must be pleaded with more particularity vis-a-vis their lack of independence. As stated in the FalconStor defendants’ papers in support of the motion to dismiss, the amended complaint never explains what, if any, knowledge the board members had concerning the misstatements and filings in connection with the unlawful contracts or what involvement they had with the criminal activity uncovered. While the result of the crimes committed was significant, and such had an effect on the value of the stock, the corporation’s actions to conduct its internal investigation are exactly the kind of actions that are entrusted to a board of directors and which the Delaware courts state they are reluctant to question. While the plaintiffs in this case attacked the board’s writings to the SEC from its internal investigation, they argue that this court should not consider the fact that the outcome of the internal investigation was ultimately accepted by the SEC in November 2011. The SEC’s acceptance actually occurred prior to the filing of the initial consolidated complaint in this action.
A careful reading of the amended complaint as well as the prosecutorial instruments and SEC correspondence attached, *934 which all counsel set forth on the record, are properly before the court on the motions to dismiss, demonstrates that they are devoid of any particularized facts that the FalconStor directors knew of the violations, or that they were provided with any red flags to support an assertion that they consistently refused to exercise proper oversight. The same can be said for the actions of the compensation committee, again where there is no allegation set forth that they acted in knowing violation of the shareholder plan, received any financial benefits therefrom, or that such was obvious as in the cases cited by the plaintiffs herein. With regard to the SEC filings, all they demonstrate, to the extent that they are even considered by this court, is that the corporation’s board acted as the group in charge of correcting any improprieties and lack of oversight to satisfy the necessary federal authorities. Approximately 16 months have passed since the last correspondence from the SEC regarding the internal investigation of the board. While the court is reluctant to apply the exculpatory clause referred to in the defendants’ motions, as this was not a summary judgment motion, it need not do so. Rather, the nonexistence of particularized facts creating reasonable doubt (1) that board members lacked independence, (2) that any challenged transaction was the product of the exercise of valid business judgment and/or (3) that board members were capable of exercising independent business judgment at the time of institution of this action require this court to grant the moving defendants’ motions to dismiss this action pursuant to CPLR 3211 (a) (7), for failure to comply with Delaware Chancery Court Rule 23.1.
As this decision dismisses the entire amended complaint based upon the plaintiffs’ failure to demonstrate the futility of demand upon the board of directors, it need not address the alternative grounds for dismissal raised in the companion motions, or the fact that one of the named defendants has failed to answer or move with respect to the pleading. In addition, although plaintiffs do not move for other relief, they ask in their memorandum of law for the right to amend their complaint should the court grant these motions. There was nothing set forth in the plaintiffs’ papers, or during oral argument, providing the court with any basis to grant this request, assuming this court were to ignore the lack of any formal proposal, and recognizing the passage of significant periods of time since both the SEC and U.S. Attorney’s investigations, as well as the final outcome of the SEC correspondence, there appears no basis for the court to grant such request.
*935 Accordingly, for all the reasons set forth, the motions to dismiss the amended complaint are granted.

. All references to the amended complaint shall be to “compl” at the paragraph indicated.

. Defendant Lin has neither joined in the motions nor responded to the amended complaint.